Argued and submitted January 2, 2014, reversed and remanded May 6, 2015

Robyn A. EICKS,
*Petitioner,*

*v.*

TEACHER STANDARDS AND
PRACTICES COMMISSION,
*Respondent.*

Teacher Standards and Practices Commission
001GB069307; A148581

349 P3d 591

Thomas K. Doyle argued the cause and filed the briefs for petitioner.

Inge D. Wells, Senior Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Erin C. Lagesen, Assistant Attorney General.

Before Ortega, Presiding Judge, and Duncan, Judge, and DeVore, Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

Petitioner seeks judicial review of the final order of the Teacher Standards and Practices Commission (TSPC) denying the renewal of her teaching license. Petitioner assigns error to the TSPC's conclusion that she engaged in gross neglect of professional duties "to exemplify personal integrity and honesty" and "to use professional judgment" when she allowed her foster son to stay in her car in the school parking lot during work hours, arguing that, the conduct does not relate to her profession. Because we conclude that the TSPC failed to demonstrate a nexus between petitioner's professional duties and her treatment of her foster child, we reverse and remand.[1]

We take the facts from the final order and the record's uncontroverted evidence. *Talbott v. Teacher Standards and Practices Comm.*, 260 Or App 355, 358, 317 P3d 347 (2013). However, we review *de novo* an agency's modification of the administrative law judge's (ALJ) historical findings of fact and, as indicated below, do not accept all of the TSPC's findings. ORS 183.650(4); *Moon v. Government Standards and Practices*, 198 Or App 244, 246 n 1, 108 P3d 112 (2005).[2]

The TSPC denied petitioner's application[3] for a school psychologist license and a school counselor license based on her conduct of leaving her foster son, M, in her car in the parking lot of the school where she worked for two days in January 2007. Petitioner has a doctoral degree in counseling and had been licensed as a school psychologist since 1989. In 1994, she began working as a school counselor in the Sweet Home School District (the district). During her tenure, petitioner received favorable evaluations from the

---

[1] Petitioner has raised eight overlapping assignments of error. The first two assignments, combined in our discussion, are dispositive, and we decline to engage in written discussion of the other assignments.

[2] Petitioner complied with the requirements of *Corcoran v. Board of Nursing*, 197 Or App 517, 526, 107 P3d 627 (2005), "*specifically* identify[ing] *each* challenged modification of a finding of historical fact and *explain*[ing] why that modification was erroneous as unsupported by a preponderance of the evidence." (Emphasis in original.)

[3] Petitioner applied for the renewal of her licenses initially, but by the time the TSPC reached its decision, her licenses had expired; thus, the TSPC denied her application.

district while employed, including during the 2007-2008 school year. The district ended her employment in 2008 after the TSPC denied petitioner's license application.

In 2004, the Department of Human Services (DHS) asked petitioner to consider providing foster care for M, a student whom petitioner had previously counseled. M had been removed from a previous foster placement because he had threatened to kill the foster parent. M was removed from a second foster placement after threatening to make false reports of abuse and neglect to DHS and police and threatening to kill or harm his foster parents and their children. Petitioner was generally aware of these issues, but nevertheless agreed to provide foster care for M, and began doing so when M was 11 years old.

M's behavior continued to escalate while in petitioner's care. M would intentionally defecate in his pants and refuse to clean himself, would eat dog food, would kick and bite other students, and would refuse to come inside at night for meals or at bedtime. Petitioner worked with a treatment team that included a family counselor and psychiatrist to implement a plan to address M's behaviors. To address M's willful self-defecation, the psychiatrist instructed petitioner to provide M with water, soap, and a towel and have him clean himself at an outdoor water spigot. Petitioner was instructed to offer a hot dinner at a set time and, if M refused to come in, to offer fruit and sandwiches instead. If M refused to come in at night during the warmer months, the team told petitioner to provide a warm sleeping bag and allow M to sleep on the screened-in porch. Petitioner had concerns about the plan, but received repeated assurances from DHS and the counselors that the plan was appropriate. M complained to his teachers that he was not getting enough to eat and that he had to bathe outside.

In January 2007, M, then aged 13, developed some nasal congestion, but according to petitioner, "did not appear to be really sick or to have a cold." Petitioner informed M's student aide, who instructed petitioner not to bring M to school if he was sick. Petitioner had largely exhausted her leave and had no respite care because M's treatment of previous respite providers had made them unwilling to watch

him. Petitioner decided to bring M to school with her and have him stay in her car outside an occupied classroom. She provided M with a sleeping bag and pillow, a large jacket, a book, and a Gameboy with new video games. M asked petitioner not to turn on the car's heater because it was too warm and he complained when she used it to dehumify the windows so that she could see more easily into the car. Petitioner checked on M every 30 minutes,[4] let him use the restroom inside the school, and brought him a warm school lunch from inside. Petitioner followed this procedure two days in a row. There is some dispute over the outside temperature during those two days, but no dispute that M was comfortable in the car; the second day, M even told petitioner not to bring the sleeping bag because he had not used it the previous day.

After the first day, petitioner informed M's student aide that M had stayed in her car during the day and that he might do so the following day. The aide informed M's alternative education teacher, and the two went to see M in the car the next day. They left him in the car, but reported petitioner to the sheriff's office for suspected abuse of M. A deputy interviewed petitioner and M later at home, concluded that M appeared to be well and happy, and closed the matter.[5]

---

[4] In its Final Order, the TSPC removed the ALJ's findings of fact indicating, consistent with petitioner's testimony, that she checked on M "every 30 minutes," concluding that that finding was not supported by a preponderance of the evidence because of an earlier DHS report where the worker recorded that petitioner said that she had checked on M "every couple of hours." Accordingly, the TSPC instead concluded that petitioner checked on M "intermittently." Because we review *de novo* the agency's modifications of the ALJ's findings of fact, and the ALJ concluded that petitioner was credible and the TSPC did not question petitioner about the contradictory hearsay evidence, we conclude that the preponderance of the evidence supported the ALJ's finding that petitioner checked on M every 30 minutes.

[5] DHS also received an anonymous report of possible abuse consisting of a number of allegations about petitioner's treatment of M. A DHS caseworker investigated the complaint and, after conducting interviews with petitioner and M, was unable to determine if there was abuse. Although DHS initially did not remove M from petitioner's home, in subsequent interviews M made inconsistent statements about petitioner's treatment of him. DHS removed M from petitioner's home during its further investigation, and later determined that the case was "founded" for mental injury and reported its disposition to the school district. Ultimately, however, the TSPC determined that those allegations were unfounded and did not provide a basis for the conclusion in the TSPC's final order.

Based on the January 2007 events, as well as other alleged conduct, the TSPC issued a "Notice of Opportunity for a Hearing" proposing to revoke petitioner's current license and denying her pending application for a new license. In the notice, the TSPC alleged that petitioner's actions in leaving M in the car on two days that were "close to or below freezing at times" constituted

> "gross unfitness under ORS 342.175(1)(c) in violation of OAR 584-020-0040(5)(e) (acts constituting criminal conduct) because your conduct constitutes Criminal Mistreatment II under ORS 163.200(1)(a) or (b); or Criminal Mistreatment I under ORS 163.205(1)(a) or (b)(C). This conduct also constitutes gross neglect of duty under ORS 342.175(1)(b) in violation of OAR 584-020-0040(4)(n) as it incorporates OAR 584-020-0010(5) (Professional Judgment); and OAR 584-020-0040(4)(o) as it incorporates OAR 584-020-0035(3)(a) (Maintain dignity of profession by obeying law exemplifying personal integrity and honesty)."

Petitioner sought a hearing before an ALJ, which resulted in a proposed order that concluded that the TSPC had not established grounds for denying petitioner's license applications.

The TSPC then issued an amended proposed order accepting the ALJ's conclusion that it had not established that petitioner had engaged in criminal conduct. However, the TSPC rejected the ALJ's conclusion that petitioner's conduct involving M staying in her car did not amount to gross neglect of duty under ORS 342.175(1)(b) and applicable TSPC rules. The TSPC proposed denying petitioner's application for school counselor and psychologist licenses. After petitioner filed exceptions to that proposed order, the TSPC issued a final order that reached the same conclusions. Petitioner now challenges that final order.

We begin our review by laying out the applicable law. ORS 342.175(1)(b) authorizes the TSPC to suspend and revoke teachers' licenses based on "gross neglect of duty." The statute further provides that "[v]iolation of rules adopted by the [TSPC] relating to competent and ethical performance of professional duties shall be admissible as evidence of gross neglect of duty or gross unfitness." ORS 342.175(6). The TSPC has adopted administrative rules

that define "gross neglect of duty" as "any serious and material inattention to or breach of professional responsibilities." OAR 584-020-0040(4). "Gross neglect of duty" includes any "[s]ubstantial deviation from professional standards of competency set forth in OAR 584-020-0010 through OAR 584-020-0030" and any "[s]ubstantial deviation from professional standards of ethics set forth in OAR 584-020-0035." OAR 584-020-0040(4)(n), (o). OAR 584-020-0010(5) mandates that "[t]he educator demonstrates a commitment to," among other things, "use professional judgment." Finally, OAR 584-020-0035(3)(a) states that "[t]he ethical educator, in fulfilling obligations to the profession, will," among other things, "[m]aintain the dignity of the profession by respecting and obeying the law, exemplifying personal integrity and honesty."

Based on the foregoing administrative rules, the TSPC concluded that petitioner's conduct of leaving M in the car at her workplace deviated from the requirement in OAR 584-020-0035(3)(a) that educators "exemplify[] personal integrity and honesty" and the requirement in OAR 584-020-0010(5) that educators "use professional judgment." Accordingly, it concluded that petitioner's deviation from TSPC standards qualified as "gross neglect of duty" under OAR 584-020-0040(n) through (o) and ORS 342.175(1)(b). The TSPC rejected petitioner's argument that her conduct toward M lacked a nexus to her profession sufficient to allow the commission to revoke her license, explaining that petitioner's conduct was directly connected to her professional responsibilities as a school counselor because the conduct occurred at petitioner's place of employment. The TSPC further determined that a sufficient nexus was established because, "as a school counselor, [petitioner was] expected to use a high degree of judgment in dealing with students" and "the way an educator behaves toward children out of school has a direct relationship on how the educator carries on his [or] her duties at school."

On appeal, petitioner argues that the TSPC's conclusion that she engaged in "gross neglect of duty" is erroneous because her actions in allowing M to stay in her car while she worked did not constitute conduct related to her profession. Our review of the TSPC's decision requires us to

evaluate its interpretation of a statutory term, "gross neglect of duty." The deference we give to an agency's interpretation of a statutory term depends on the nature and scope of authority that the words convey to the agency. *Springfield Education Assn. v. School Dist.*, 290 Or 217, 223, 621 P2d 547 (1980). The Supreme Court has held, in evaluating the TSPC's interpretation of "gross neglect of duty," that "any rulemaking authority that the TSPC might garner from [ORS 342.175] is limited by the *legislature's* view of the boundaries of that term" and that "the TSPC's role is interpretative, not legislative." *Teacher Standards and Practices v. Bergerson*, 342 Or 301, 312, 153 P3d 84 (2007).

Our discussion of the parties' arguments is aided by first reviewing the Supreme Court's decision in *Bergerson*. There, the TSPC had suspended the petitioner's license after determining that her conduct of ramming her car into her husband's truck during a suicide attempt, which led to a conviction for criminal mischief, constituted "gross neglect of duty" and "gross unfitness." *Id.* at 305-07. The court noted that the TSPC had not attempted to draw a nexus between the petitioner's conduct and her professional responsibilities, relying instead on a reading of its applicable rules that "define[d] a teachers' professional duties as including a requirement that teachers behave ethically and lawfully at all times and provide[d] that any substantial deviation from that requirement [was] sanctionable as 'gross neglect of duty.'" *Id.* at 308-09, 311-12.[6] The court concluded that the TSPC rules' requirement of ethical behavior "at all times" was inconsistent with legislative intent. *Id.* at 312. The court explained that "professional dut[ies]," as expressed in ORS 342.175(5) and implied in ORS 342.175(1)(b) (gross neglect of duty), "are specific to a profession and are distinct from the moral and civil obligations of all citizens to behave ethically and to obey the law at all times." *Id.* In light of that legislative intention, "there must be a clear nexus between the conduct at issue and the teacher's *professional* responsibilities." *Id.* at 310 (emphasis in original). The court concluded that the TSPC had failed to identify a

---

[6] Among other rules, the TSPC had cited OAR 584-020-0035, which describes an "ethical educator" as one who "acts at all times in ethical ways."

specific professional obligation that the petitioner had failed to uphold, and, therefore, there was no nexus between the petitioner's conduct and her professional duties. *Id.* at 312.

We applied *Bergerson* in *Talbott,* a second case examining "gross neglect of duty." 260 Or App 355. There, we reviewed the TSPC's suspension of the petitioner's teaching license based on its conclusion that the petitioner committed a gross neglect of duty when he wrote a disrespectful letter to a parent mocking her concern about his teaching and when, after taking a job at a different school, he left a book entitled *The Girl's Guide to Being a Boss (Without Being a Bitch)* in the office of his former principal. *Talbott,* 260 Or App at 362. We determined that the TSPC did not err in concluding that the teacher's disrespectful letter to the parent constituted a gross neglect of duty, even though the teacher was off duty and off premises at the time he wrote it, because the conduct had a specific and demonstrable nexus to the teacher's professional duties, which, "at a minimum, preclude[d] responding to a parent's concerns by intentionally mocking the parent." *Id.* at 376-77. However, we concluded that the TSPC erred when it concluded that giving the book to the principal was a gross neglect of duty; that "was a private expression of his opinion, as a former employee, of her management[;] expression of that opinion did not take place where students or other staff members would see or hear it [and] there is no indication of any effect on [the principal's] or [the petitioner's] professional responsibilities." *Id.*

We return to petitioner's arguments in this case. In challenging the TSPC's conclusion that she breached a professional duty to exemplify personal integrity and honesty and thereby committed a gross neglect of duty, petitioner contends that the TSPC has failed to prove the required nexus between her conduct and her professional duties. She argues that the TSPC's decision assumes an obligation for teachers to act with "personal integrity and honesty" at all times, which was rejected by the Supreme Court in *Bergerson.* She contends that her duties as a school counselor were not connected to her decision to allow her foster son to stay in her car at work.

The TSPC counters that it established the required nexus because (1) the conduct occurred at petitioner's place of employment; (2) petitioner was expected to use a high degree of judgment in dealing with students; and (3) there is a direct relationship between how an educator behaves toward children outside school and how an educator performs her duties in school. By contrast, the conduct in *Bergerson* occurred away from school premises and did not involve management of a child. The TSPC emphasizes that petitioner's ability to address M's behavior problems reflects on her ability to counsel and treat students who, like M, have been entrusted to her care. Moreover, the TSPC asserts that petitioner's conduct calls into question her professional judgment because conducting personal business while at work meant that her attention was diverted from her job, and that, because there is no indication that she received permission from her employer for the arrangement, petitioner failed to "exemplify[] personal integrity and honesty."

We are not persuaded that the TSPC has established a sufficient nexus. First, as to location, *Talbott* illustrates that conduct on school grounds does not always establish a required nexus to a professional duty that can support a finding of gross neglect of duty. In this case, given the lack of any evidence that petitioner's performance of her professional responsibilities was impaired on the days in question, the location of the conduct is not determinative.

Second, the fact that petitioner's job involves a high degree of judgment does not provide a sufficient nexus for concluding that questionable judgments that she made under difficult personal circumstances constituted gross neglect of duty. Petitioner made the decisions at issue when faced with unusually challenging personal circumstances. The fact that her job also required her to make difficult decisions does not turn her questionable personal judgments into a gross neglect of duty.

Finally, the fact that the decisions at issue involved a child does not provide a sufficient nexus in this case. The TSPC itself concluded that M was not neglected or harmed in any way. While mistreatment or neglect of a child might

well implicate an educator's professional duties, the circumstances here do not rise to the level of gross neglect of duty. The TSPC erred in concluding otherwise.

We turn, finally, to the TSPC's interpretation of OAR 584-020-0035(3)(a), which states that teachers must "maintain the dignity of the profession by respecting and obeying the law, exemplifying personal integrity and honesty." We disagree with the premise that led to the TSPC's conclusion that petitioner demonstrated a gross neglect of duty because she failed to "exemplify[] personal integrity and honesty." That conclusion requires reading the phrase "exemplifying personal integrity and honesty," which in the rules modifies "respecting and obeying the law," as an independent requirement of teachers. In interpreting the rule to create an independent requirement that teachers behave ethically at all times, the TSPC did exactly what the court in *Bergerson* held it could not. 342 Or at 312. As there is no independent requirement that petitioner "exemplify personal integrity and honesty," and the commission concluded that she did not break the law in any way, the TSPC's argument fails.

In sum, we conclude that the TSPC erred in denying petitioner's application for a school psychologist license and a school counselor license.

Reversed and remanded.